IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SUN RIVER ENERGY, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:13-CV-2456-D |
| VS. | § | |
| | § | |
| HARRY NEAL McMILLAN, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In a prior memorandum opinion and order in this case, the court raised *sua sponte* that defendants are entitled to partial summary judgment dismissing plaintiff Sun River Energy, Inc.'s ("Sun River's") claim that defendant Harry Neal McMillan's ("McMillan's") purchase and subsequent sale of New Mexico Energy, LLC ("NME") violated § 16(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78p(b), and it granted Sun River leave to submit supplemental briefing opposing summary judgment on this basis. *See Sun River Energy, Inc. v. McMillan*, 2014 WL 4771852, at *1, *16 (N.D. Tex. Sept. 25, 2014) (Fitzwater, C.J.) ("*Sun River I*"). Having considered the supplemental briefing, the court grants summary judgment dismissing this claim.

I

The pertinent background facts and procedural history are set out in *Sun River I*. *See id.* at *1-2. Sun River alleges that McMillan violated § 16(b) of the Exchange Act by purchasing and then selling NME within a six-month period, while McMillan was an insider or beneficial owner of the securities that made up the entirety of NME's assets at the time

of the purchase and sale. Defendants maintain that, although McMillan purchased and sold a security while he was an insider or beneficial owner, the purchase and subsequent sale did not occur within a six-month time period, as is necessary to prove a violation of § 16(b).

In *Sun River I* the court granted defendants' motion for summary judgment that the purchase of NME occurred on January 14, 2011. *Id.* at *14. The court denied Sun River's motion for summary judgment that the sale of NME occurred within six months of McMillan's purchase on January 14, 2011. The court concluded that a reasonable trier of fact could only find that the sale of NME occurred on July 15, 2011. *Id.* at *15. Because defendants did not move for summary judgment on this issue, the court raised it *sua sponte* and permitted Sun River to file a supplemental brief and supporting appendix opposing summary judgment on this basis. Sun River has made these filings, and the motion is now ripe for decision.

II

When a summary judgment movant will not have the burden of proof on a claim at trial, it can obtain summary judgment by pointing the court to the absence of evidence on any essential element of the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once it does so, the nonmovant must go beyond its pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof

as to any essential element renders all other facts immaterial. *Trugreen Landcare, LLC v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmoving party fails to meet this burden. *Little*, 37 F.3d at 1076.

III

To recover under § 16(b) based on McMillan's purchase and sale of NME, Sun River must prove that McMillan (1) purchased an equity security, (2) sold the same, (3) while an insider or beneficial owner, (4) within a six-month period. *See Gwozdzinsky v. Zell/Chilmark Fund, L.P.*, 156 F.3d 305, 308 (2d Cir. 1998). In *Sun River I* the court concluded that Sun River had established beyond peradventure the first three elements, and it held that the purchase of NME occurred on January 14, 2011. *Sun River I*, 2014 WL 4771852, at *14. The court now considers only whether there is a genuine issue of material fact with respect to the date on which *the sale* of NME occurred.

To avoid summary judgment, Sun River must present evidence that would enable a reasonable trier of fact to find that the sale of NME occurred within six months of January 14, 2011, the date of McMillan's purchase. As the court explained in *Sun River I*, to determine when a sale is complete for purposes of § 16(b), the court looks to "that point at which the insider has relinquished his ability to control the transaction to the extent that he no longer has the potential to use inside information to his own advantage and to the detriment of the public or outside shareholders." *Id.* at *15 (quoting *Provident Sec. Co. v. Foremost-McKesson, Inc.*, 506 F.2d 601, 606-07 (9th Cir. 1974)). "This ability to control is generally relinquished when the insider is irrevocably bound to sell a specific number of

shares at a fixed price, even though the formalities necessary for the transfer of title may not have yet occurred." *Id.* (quoting *Foremost-McKesson*, 506 F.2d at 607). Thus the date of the sale of NME is the date on which McMillan became irrevocably bound to sell NME to Silver Creek Holdings ("Silver Creek").

The agreement between McMillan and Silver Creek that provided for the sale of NME ("Silver Creek Agreement") required that a number of conditions be met before the transaction could close. It was necessary for McMillan to provide, *inter alia*, certain corporate documents, acquire certain releases and resignations, and deliver the share certificates to Silver Creek. It was required that Silver Creek, *inter alia*, execute a wire transfer for the cash payment, and provide a note and a pledge. The Silver Creek Agreement also included the following provision: "Unless the Closing of this transaction takes place on or before June 30, 2011, either party may terminate this Agreement." Ps. Nov. 23, 2013 App. 143.

It is undisputed that closing did not occur before June 30, 2011, and therefore McMillan and Silver Creek both retained the right to terminate the Silver Creek Agreement until closing occurred. It is also undisputed that all the conditions precedent to closing were fulfilled prior to July 15, 2011, except McMillan's delivery of the share certificates. Therefore, according to the terms of the Silver Creek Agreement, both McMillan and Silver Creek retained the right to terminate the agreement until the point when McMillan delivered the share certificates and the transaction closed. Because the delivery of the share certificates did not occur until July 15, 2011, the Silver Creek Agreement became irrevocable on July

15, 2011, not before.

Sun River argues that delivery of the share certificates was a purely ministerial act that was not material for purposes of § 16(b), and thus a reasonable trier of fact could find that the Silver Creek Agreement became irrevocable prior to July 15, 2011. Sun River correctly points out that where an agreement is irrevocable, but the mere formalities of transfer of title have not yet occurred, the date of the sale will not be governed by the ministerial acts that transfer title. *See Foremost-McKesson*, 506 F.2d at 607. But where, as here, a specific provision in the agreement explicitly gives either party the right to terminate the agreement before all conditions precedent are met, and delivery of the shares is an explicit condition precedent, the agreement remains revocable until all conditions for closing have occurred, including conditions that might otherwise be considered merely ministerial acts in other circumstances.[*] Because closing could not occur until the share certificates were delivered, and either party had the right to terminate the Silver Creek Agreement up to the point of closing, the agreement did not become irrevocable until the share certificates were delivered on July 15, 2011.

---

[*]The cases Sun River cites in support of its assertion that "[e]very single authority" supports the conclusion that "a reasonable factfinder could easily find that the July 15, 2011 handover of share certificates was not a 'material' condition," P. Br. 4-5, are distinguishable. This is so because none of these cases involved an agreement that explicitly gave the parties the right to revoke the agreement up to the point that all conditions precedent to closing had occurred. These cases do recognize, however, that it is the time at which the obligation to sell becomes irrevocable that controls for purposes of determining the effective date of sale. *See, e.g., Foremost-McKesson*, 506 F.2d at 607; *Riseman v. Orion Research, Inc.*, 749 F.2d 915, 920 (1st Cir. 1984); *Prager v. Sylvestri*, 449 F. Supp. 425, 431-33 (S.D.N.Y. 1978).

The court therefore holds that a reasonable trier of fact could only find that the sale of NME occurred on July 15, 2011, and it grants summary judgment in favor of defendants dismissing Sun River's claim that McMillan's purchase and subsequent sale of NME violated § 16(b) of the Exchange Act.

\* \* \*

For the reasons explained, the court grants summary judgment dismissing Sun River's claim that McMillan's purchase and subsequent sale of NME violated § 16(b) of the Exchange Act.

**SO ORDERED.**

November 3, 2014.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE