IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SUN RIVER ENERGY, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:13-CV-2456-D |
| VS. | § | |
| | § | |
| HARRY NEAL McMILLAN, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Sun River Energy, Inc. ("Sun River") sues defendants Harry Neal McMillan ("McMillan") and Cicerone Corporate Development, LLC ("Cicerone")[1] to recover short-swing profits under § 16(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78p(b), that Sun River alleges McMillan and Cicerone realized from transactions in Sun River common stock and derivative securities. After the court addressed the parties' cross-motions for summary judgment and defendants' motion to amend the scheduling order, the case was tried to the court. In this memorandum opinion and order, and for the reasons that follow,[2] the court finds and concludes that § 16(b)'s two-year period for filing suit is a statute of limitations, not a statute of repose; that Sun River proved[3] that the limitations

---

[1]Sun River also sued CE McMillan Family Trust ("the Trust"), but it dismissed with prejudice its action against the Trust by November 14, 2014 stipulation of dismissal.

[2]The court sets out in this memorandum opinion and order its findings of fact and conclusions of law. *See* Fed. R. Civ. P. 52(a)(1).

[3]All findings of fact are based on a preponderance of the evidence standard.

period should be equitably tolled; and that Sun River's action against Cicerone is not time-barred. The court also interprets SEC Rule 16b-6(c)(2), 17 C.F.R. § 240.16b-6(c)(2), and decides how it is to be applied when calculating the amounts of short-swing profits that defendants must disgorge. Because the court concludes that additional briefing would be helpful in calculating Sun River's recovery of short-swing profits, the court defers a final decision in this respect, and it establishes a procedure for such briefing.

I

The court incorporates in this memorandum opinion and order as the law of the case the legal conclusions contained in its prior memorandum opinions and orders. *See Sun River Energy, Inc. v. McMillan*, 2014 WL 4771852 (N.D. Tex. Sept. 25, 2014) (Fitzwater, C.J.) ("*Sun River I*"), and *Sun River Energy, Inc. v. McMillan*, 2014 WL 5528220 (N.D. Tex. Nov. 3, 2014) (Fitzwater, C.J.).[4] In their opening statements, both sides characterized the evidence as largely undisputed, which the trial itself has confirmed. The court will therefore focus its discussion of the evidence and its findings of fact on the material factual disputes.[5]

---

[4]The parties assume in the pretrial order that these rulings are the law of the case. *See* Pretrial Order at 10 n.3.

[5]Although the court has carefully considered the trial testimony and exhibits, this memorandum opinion and order has been written to comply with the level of detail required in this circuit for findings of fact and conclusions of law. *See, e.g., Century Marine Inc. v. United States*, 153 F.3d 225, 231 (5th Cir. 1998) (discussing standards). The court has not set out its findings and conclusions in punctilious detail, slavishly traced the claims issue by issue and witness by witness, or indulged in exegetics, parsing or declaiming every fact and each nuance and hypothesis. It has instead written a memorandum opinion and order that contains findings and conclusions that provide a clear understanding of the basis for the court's decision. *See id.*

- 2 -

The following overarching issues were presented at trial: first, whether § 16(b)'s two-year period for filing suit is a statute of limitations or a statute of repose, and, if a statute of limitations, whether Sun River proved that the limitations period was equitably tolled with respect to its action against Cicerone;[6] and, second, the amount of short-swing profits that Sun River is entitled to recover under § 16(b), including whether SEC Rule 16b-6(c)(2) operates to materially reduce Sun River's overall recovery.  Sun River maintains that it is entitled to recover short-swing profits in the sum of $4,592,543.90 from McMillan and in the sum of $1,025,212.30 from Cicerone.  Defendants contend that Sun River is entitled to a much smaller recovery from McMillan, and that Sun River's action against Cicerone is time-barred, regardless whether § 16(b)'s two-year period for filing suit is deemed a statute of repose or a statute of limitations that can be equitably tolled.

## II

The court turns first to the question whether Sun River's action against Cicerone is time-barred.

## A

Defendants maintain that Sun River's action against Cicerone is time-barred because § 16(b)'s two-year period for filing suit is a statute of repose that cannot be extended based on background legal rules such as equitable tolling.  They contend that any action to recover

---

[6]Defendants argued at trial that, if Sun River's action against Cicerone were time-barred, this would affect Sun River's right of recovery from McMillan.  The court need not address this argument in view of its conclusion that Sun River's action against Cicerone is not time-barred.

alleged short-swing profits realized by Cicerone before June 27, 2011 is barred.  Defendants also posit that, even if the two-year period is a statute of limitations, Sun River has failed to meet its burden of proving that it is entitled to equitable tolling.  Sun River argues that § 16(b)'s two-year period is a statute of limitations and that it has proved that the limitations period was equitably tolled.

B

In *Credit Suisse Securities (USA) LLC v. Simmonds*, ___ U.S. ___, 132 S.Ct. 1414 (2012), petitioners relied on *dictum* from *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350 (1991), in which the Supreme Court stated that "Section 16(b) . . . sets a 2-year . . . period of repose."  *Id.* at 1419 (quoting *Lampf*, 501 U.S. at 360 n.5).  The Supreme Court explicitly declined to reach petitioners' contention, concluding that, even if the two-year period could be extended, it was not tolled on the basis on which the Ninth Circuit had relied.  *Id.*  Petitioners had argued in the Ninth Circuit that § 16(b) established a period of repose that was not subject to tolling.  *See id.* at 1421.  Writing for an eight-member Court (Chief Justice Roberts did not participate in the case), Justice Scalia noted that the justices were "divided 4 to 4 concerning, and thus affirm without precedential effect, the Court of Appeals' rejection of petitioners' contention that § 16(b) establishes a period of repose that is not subject to tolling."  *Id.*

Accordingly, based on the current state of the law, and absent a definitive decision of the Supreme Court to the contrary, the court holds that § 16(b)'s two-year period for filing suit is a statute of limitations, not a statute of repose.  The court also concludes, as in *Sun*

- 4 -

*River I*, that this statute of limitations can be equitably tolled.  *Sun River I*, 2014 WL 4771852, at *9-10.[7]

C

The court now considers whether Sun River has met its burden of proving that the limitations period should be equitably tolled with respect to its action against Cicerone.[8]

1

In *Sun River I* the court held that a reasonable trier of fact could find that the limitations period was tolled during the pendency of the adversary proceeding that Sun River initiated in the bankruptcy court on February 10, 2012 against McMillan, the CE McMillan Family Trust, and Cicerone, in which Sun River alleged the same violations of § 16(b) as it asserts in this lawsuit.  *Id.* at *10.  The court quoted the Fifth Circuit's decision in *Platoro Ltd. v. Unidentified Remains of a Vessel*, 614 F.2d 1051 (5th Cir. 1980), in which the panel held that

> the mere fact that a federal statute providing for substantive relief also sets a time limitation upon the institution of suit under the statute does not restrict the power of the federal courts to hold that the statute of limitations is tolled under certain circumstances not inconsistent with the legislative purpose.

*Id.* at *9 (quoting *Platoro*, 614 F.2d at 1054).  And the court relied on *Burnett v. New York*

---

[7]Although defendants maintain that § 16(b)'s two-year period is a statute of repose, they acknowledged at trial that, if it is a limitations period, it can be equitably tolled if Sun River meets its burden of proof.

[8]As both sides recognize, Sun River bears the burden of proving that the limitations period should be equitably tolled.  *Sun River I*, 2014 WL 4771852, at *8.

- 5 -

*Central Railroad Co.*, 380 U.S. 424 (1965), and *Platoro* in concluding that the limitations period could be equitably tolled where a plaintiff actually filed suit within the limitations period, albeit in the wrong forum. *Id.* at *9-10. In *Platoro*, for example, the Fifth Circuit held that the statute of limitations was tolled during the pendency of a suit that was dismissed because the district court did not have *in rem* jurisdiction, the plaintiff was diligent in prosecuting the suit, and the defendant was cognizant of the plaintiff's claim from almost the beginning. *Platoro*, 614 F.2d at 1054-55.

The court pointed out that on February 10, 2012—i.e., on a date well within the limitations period—Sun River filed in the bankruptcy court an adversary proceeding against McMillan, the Trust, and Cicerone, alleging the same violations of § 16(b) as it asserts in this lawsuit; all parties consented to have the adversary proceeding heard by the bankruptcy court;[9] when the bankruptcy court dismissed the adversary proceeding without prejudice and without addressing the merits, Sun River asked the bankruptcy court to retain jurisdiction over the adversary proceeding; and when the bankruptcy court declined to do so, Sun River filed the instant lawsuit. *Sun River I*, 2014 WL 4771852, at *10. The court reasoned that, based on the remedial nature of § 16(b) of the Exchange Act and the fact that Sun River initially filed suit in a court of competent jurisdiction, a reasonable trier of fact could find that the limitations period was tolled during the pendency of the adversary proceeding. *Id.*

---

[9]The court does not suggest that consent is legally sufficient to confer jurisdiction on the bankruptcy court; the fact that the parties consented bears, however, on the question of Sun River's diligence.

2

The evidence presented at trial is consistent with the reasoning on which the court relied in *Sun River I*.  Sun River first learned of its § 16(b) claims in August 2011, and, on February 10, 2012, within one year of the last transaction at issue, it filed in McMillan's bankruptcy case an adversary proceeding against McMillan and Cicerone that addressed virtually every transaction at issue in this lawsuit.

Sun River filed the adversary proceeding in the bankruptcy court because an involuntary petition—the prosecution of which Sun River's Chairman of the Board of Directors, Donal Schmidt, had helped finance—was already pending there against McMillan. Sun River had various reasonable reasons for bringing its § 16(b) action in McMillan's bankruptcy case.  Sun River also reasonably concluded that there were disadvantages to bringing the claim in the district court or in both the district and bankruptcy courts.

Although the bankruptcy court is an Article I court, all parties consented to have the adversary proceeding heard by the bankruptcy court.  The doubt concerning its jurisdiction over the adversary proceeding (which the court discusses below) arose only if the underlying involuntary bankruptcy did not result in an order for relief.  In other words, this was not a case in which the bankruptcy court could under no circumstances exercise jurisdiction; as the bankruptcy judge concluded, it could not exercise jurisdiction absent the entry of an order for relief in the underlying involuntary bankruptcy.  There is no evidence that, at the time Sun River initiated the adversary proceeding, there was reason to doubt that an order for relief would be entered.

Once the adversary proceeding was filed, Sun River sought to prosecute it as quickly as possible.  Sun River requested a brief trial continuance only after it did not receive requested discovery.  Another continuance was granted on the consent of all parties.  After summary judgment motions were filed, two other agreed trial continuance motions were filed at the urging of the bankruptcy judge, due to the pending summary judgment motions.

When the bankruptcy judge heard oral argument on the summary judgment motions on December 17, 2012, he raised the concern that there would be serious jurisdictional problems if he ruled in Sun River's favor but later determined that the underlying involuntary bankruptcy should not result in an order for relief.  But the bankruptcy judge did not dismiss the adversary proceeding at that time, and Sun River had no reason to believe that the underlying involuntary bankruptcy petition would be denied.

On June 4, 2013 the bankruptcy court dismissed the involuntary bankruptcy petition against McMillan and dismissed the adversary proceeding without prejudice, and without reaching the merits of Sun River's § 16(b) action.  On June 13, 2013, within days of being notified of the dismissal, Sun River filed a motion to vacate the dismissal order and reinstate the case, which the bankruptcy judge granted in a July 30, 2013 order.  Sun River also filed on June 13, 2013 a motion to withdraw the reference, believing that the bankruptcy judge would address the motion and make a recommendation to the district judge.  Sun River filed the instant lawsuit on June 26, 2013, within days of the bankruptcy court's dismissal.

Other than seeking leave for its attorneys to appear, Sun River took no other action to prosecute the motion to withdraw the reference.  But it believed there was nothing to do

until the bankruptcy judge made a report and recommendation and the district judge acted on it.  On March 17, 2014 the district judge dismissed the motion to withdraw the reference on the assumption that the motion was no longer being pursued.  He pointed out that he had never been provided a copy of the motion, had never received a report and recommendation from the bankruptcy judge, and no action had been taken in the matter other than the granting of two motions for admission *pro hac vice*.

At the time the motion to withdraw the reference was dismissed, Sun River had already filed and begun diligently prosecuting the instant suit.  Sun River then diligently prosecuted the case, filing a summary judgment motion prior to the court-imposed deadline, requesting no continuances, and bringing the case to trial within 18 months of filing suit.

3

Defendants challenge on three grounds Sun River's assertion that the limitations period should be tolled.  They maintain that Sun River failed to act diligently (1) when it filed an adversary proceeding in the bankruptcy court—an Article I court of limited jurisdiction—rather than a civil action in an Article III court; (2) when it failed to cure the jurisdictional deficiency by filing a motion to withdraw the reference, especially after the bankruptcy judge raised concerns about the bankruptcy court's jurisdiction; and (3) when it failed to prosecute the motion to withdraw the reference that it filed after the bankruptcy court dismissed the adversary proceeding.  The court is not persuaded by any of these contentions.

First, when Sun River filed the initial adversary proceeding, all parties consented to

have the adversary proceeding heard by the bankruptcy court, and there was no reason to conclude that there was any basis—including doubt about whether the underlying involuntary bankruptcy should result in an order for relief—to question the bankruptcy court's jurisdiction.

Second, although on December 17, 2012 the bankruptcy judge raised during oral argument of the summary judgment motions the concern that there would be serious jurisdictional problems if he ruled in Sun River's favor but later determined that the underlying involuntary bankruptcy should not result in an order for relief, the question was still an open one at the time of the hearing, i.e., it had not been determined whether the underlying bankruptcy would be dismissed.  And once the bankruptcy judge did dismiss the adversary proceeding in June 2013, Sun River acted diligently by promptly asking the bankruptcy court to reinstate the adversary proceeding, moving to withdraw the reference, and filing the instant lawsuit.

Third, although the district judge dismissed the motion to withdraw the reference on the assumption that the motion had been abandoned, he did so based not only on inaction by Sun River, but by the bankruptcy judge, who never transmitted a report and recommendation to the district judge.  And in any event, by the time the district judge dismissed the motion to withdraw the reference in March 2014, Sun River had already filed and begun diligently prosecuting the instant suit.

4

In sum, Sun River timely filed its § 16(b) action in the bankruptcy court within the

limitations period; when it did so, the bankruptcy court's jurisdiction was not in doubt; the case was dismissed because the bankruptcy court lacked jurisdiction; Sun River was diligent in prosecuting the original adversary proceeding and the instant suit; and defendants have long been cognizant of Sun River's claim, dating from the time the adversary proceeding was commenced in the bankruptcy court.  Accordingly, the court finds and concludes that Sun River has met its burden of proving that the limitations period was equitably tolled.  Because equitable tolling applies, Sun River's action against Cicerone is not time-barred.[10]

III

The court now considers what amounts of short-swing profits McMillan and Cicerone must disgorge.

A

Although defendants challenge Sun River's calculations of profits on various grounds, their most significant argument—their counsel characterized it in closing argument as "the big issue in this case"—is whether SEC Rule 16b-6(c)(2) effectively precludes Sun River from recovering profits arising from the matched purchase and sale, or sale and purchase, of certain Sun River derivative securities having different characteristics.  Defendants contend, for example, there were no profits arising from the sale and purchase of New Mexico Energy,

---

[10]At trial, defendants objected to Sun River's introducing in evidence a copy of the motion to withdraw the reference, and the court carried the objection.  Because the court is not relying on this exhibit or the evidence relating to the exhibit in reaching its decision, it overrules the objection as moot.  There is other evidence in the trial record (including exhibits that defendants introduced) that support the court's findings and conclusions.

LLC ("NME") because the market price of Sun River securities on January 14, 2011 ($3.45 per share)—the date of the deemed purchase of NME—exceeded the market price on September 21, 2010 ($1.60 per share)—the date of the deemed sale of NME.

B

Before addressing the merits of this argument, the court must decide whether defendants waived their reliance on Rule 16b-6(c)(2).  In closing argument, Sun River contended that defendants waived this argument because, prior to the eve of trial, they did not assert that the purchase price for McMillan's acquisition of NME should be deemed $3.45 per share; Sun River alleged in its complaint a purchase price of $0.0004 per share, and defendants admitted this allegation without qualification; Sun River included the same price per share purchase in a table in its summary judgment brief (in this case and in the adversary proceeding), and defendants never disputed this price in their own summary judgment chart that was based on Sun River's table; and defendants made no effort to incorporate the disputed question in the pretrial order.  Defendants oppose Sun River's waiver arguments on various grounds.  The court holds that defendants did not waive their reliance on Rule 16b-6(c)(2).

First, Sun River has not demonstrated that the operation of Rule 16b-6(c)(2) is a matter that must be pleaded or otherwise affirmatively raised.

Second, even if the court assumes *arguendo* that defendants were obligated to raise the argument that Rule 16b-6(c)(2) controls the calculation of short-swing profits as applied

to the facts of this case, they did so in the pretrial order. *See* Pretrial Order ¶ I(B)(5) (stating as one of defendants' defenses that "[t]he calculation of short-swing profits is subject to reduction or elimination by the limitations imposed by Rule 16b-6(c)."). "Once entered, a pretrial order governs the trial." *Hall v. State Farm Fire & Cas. Co.*, 937 F.2d 210, 212 (5th Cir. 1991). Defendants preserved in the pretrial order their reliance on Rule 16b-6(c)(2).

Third, in ¶ 43 of Sun River's complaint, it alleged that "[o]n or about February 8, 2011, McMillan entered into an agreement with [Robert Doak] pursuant to which McMillan purchased from Doak 100% of the outstanding membership interests in NME for $1,000 (the 'NME Purchase')." Compl. ¶ 43. In their answer, defendants stated: "In response to paragraph 43, Defendants admit that McMillan entered into an agreement with Doak to purchase 100% of the outstanding membership interests in NME for $1,000, and otherwise deny the allegations in paragraph 43." Ans. ¶ 43. Defendants did not, as Sun River contends, admit without qualification that the per share purchase price was $0.0004.

Fourth, defendants did not waive their reliance on Rule 16b-6(c)(2) in their summary judgment briefing, and, as explained above, defendants in fact incorporated the disputed question in the pretrial order.

## C

The court now turns to the merits of defendants' argument. Rule 16b-6(c) provides:

> In determining the short-swing profit recoverable pursuant to section 16(b) of the Act from transactions involving the purchase and sale or sale and purchase of derivative and other securities, the following rules apply:

(1) Short-swing profits in transactions involving the purchase and sale or sale and purchase of derivative securities that have identical characteristics (e.g., purchases and sales of call options of the same strike price and expiration date, or purchases and sales of the same series of convertible debentures) shall be measured by the actual prices paid or received in the short-swing transactions.

(2) Short-swing profits in transactions involving the purchase and sale or sale and purchase of derivative securities having different characteristics but related to the same underlying security (e.g., the purchase of a call option and the sale of a convertible debenture) or derivative securities and underlying securities *shall not exceed the difference in price of the underlying security on the date of purchase or sale and the date of sale or purchase*. Such profits may be measured by calculating the short-swing profits that would have been realized had the subject transactions involved purchases and sales solely of the derivative security that was purchased or solely of the derivative security that was sold, valued as of the time of the matching purchase or sale, and calculated for the lesser of the number of underlying securities actually purchased or sold.

17 C.F.R. § 240.16b-6(c) (emphasis added).   When matching transactions that involve derivative securities that have different characteristics, Rule 16b-6(c)(2) controls. *See Segen v. CDR-Cookie Acquisitions, L.L.C.*, 2006 WL 59550, at *3 (S.D.N.Y. Jan. 4, 2006) (citing *Segen v. Westcliff Capital Mgmt., LLC*, 299 F.Supp.2d 262, 268 (S.D.N.Y. 2004)).   Rule 16b-6(c)(2) provides, in pertinent part, that, in such circumstances, short-swing profits "shall not exceed the difference in price of the underlying security on the date of purchase or sale and the date of sale or purchase."   17 C.F.R. § 240.16b-6(c)(2).   The price of the underlying security is the market price, not the "actual" price.   *See CDR-Cookie*, 2006 WL 59550, at *5; *Segen*, 299 F.Supp.2d at 269 (rejecting plaintiff's reliance on "actual price" paid rather than

- 14 -

market price of underlying common stock).  "It is beyond cavil that the use of the market price of the underlying security to determine short-swing profits for matched derivative transactions is the proper method."  *Segen*, 299 F.Supp.2d at 271.

To illustrate how this interpretation of Rule 16b-6(c)(2) would function in this case (it depends, in part, on how the court ultimately matches the transactions in question), the court will assume *arguendo* that the deemed purchase and deemed sale of NME should be matched, as defendants contend.  Applying Rule 16b-6(c)(2) to these transactions in Sun River derivative securities that have different characteristics would result in the finding that no short-swing profits were realized because the market price of Sun River stock on September 21, 2010 (the sale date) was lower than the market price on January 14, 2011 (the purchase date).

Sun River contends that the stock price to be used for the NME transaction is calculated based on the $1,000 price that McMillan actually paid, not the market price of Sun River's stock.  The court disagrees.  Rule 16b-6(c)(1), unlike Rule 16b-6(c)(2), requires the use of the *actual* price when determining the amount of short-swing profits in transactions involving the purchase and sale or sale and purchase of derivative securities that have *identical* characteristics.  By contrast,

> assigning the meaning "actual price of the derivative security" to the phrase the "price of the underlying security" in Rule 16b-6(c)(2) . . . is precluded by the doctrine of *expressio unius est exclusio alterius.*  Unlike Rule 16b-6(c)(2), which governs transactions where different derivative securities are matched, the Commission used the phrase "actual price" to address

> transactions where identical derivative securities are matched in
> Rule 16b-6(c)(1). . . .  Since the SEC clearly knew how to use
> the term "actual price" when it intended to, the phrase's absence
> from Rule 16b–6(c)(2) prohibits assigning the meaning argued
> by plaintiff.

*Id.* (footnote and citations omitted).

Sun River maintains that, because McMillan simultaneously acquired NME and the option to purchase NME, it follows that he purchased Sun River stock at the same time he purchased the derivative of Sun River stock, meaning that the purchase price is the stock price for purposes of Rule 16b-6(c)(2).  To the extent Sun River relies on this argument to contend that the court should use the actual price paid rather than the market price of Sun River's stock on the date in question, it is not supported by a plain reading of Rule 16b-6(c)(2).

Sun River also relies on cases such as *Chechele v. Ward*, 2011 WL 1405244 (W.D. Okla. Apr. 13, 2011), to argue that defendants' position, if adopted, would abrogate the burden-shifting framework under which Sun River must make a prima facie showing of the maximum recoverable profit based on the contemporaneous stock price and defendants must then identify available deductions, offsets, or more favorable prices.  But the only opinion in *Chechele* that the court has located, *see id.*, does not discuss, much less support, such a burden-shifting framework, *see, e.g., id.* at \*5.  And even if such a burden-shifting framework applies, it would appear that defendants can satisfy their burden of establishing, for example, that no short-swing profits were realized from the sale and purchase of the Sun

River derivatives through the NME transactions of September 21, 2010 and January 14, 2011.

Although the court defers a final decision on the application of Rule 16b-6(c)(2) until it considers the parties' supplemental briefing and matches the transactions in question, the parties should assume that the court will interpret and apply Rule 16b-6(c)(2) as set forth in this memorandum opinion and order.

## IV

The court concludes that additional briefing would be helpful in calculating Sun River's recovery of short-swing profits.[11]  Although the parties explained their respective positions during closing arguments, they did not have the benefit of the court's interpretation and application of Rule 16b-6(c)(2).  And the parties have identified other issues that would benefit from additional briefing.  These include whether profits should be allocated between McMillan and Cicerone due to Josh Pingel's one-time 50% ownership of Cicerone, and whether Sun River is attempting to obtain a double recovery from McMillan and Cicerone by matching the same transactions to both.  The parties should address how these questions bear on Sun River's recovery and should specify the sums that they maintain are recoverable, depending on the court's resolution of the legal and/or factual issues that they present.  They should also clearly explain how they are matching the transactions, how they are calculating the short-swing profits for each set of matching transactions, and, if applicable, how they are

---

[11]At the conclusion of the trial, both sides indicated that they are willing to make any necessary post-trial submissions that would assist the court in reaching its decision.

allocating liability between McMillan and Cicerone.

The court therefore grants each side leave to file a supplemental brief, not to exceed 30 countable pages,[12] that addresses the issues (including those identified above) that the court must decide when calculating Sun River's recovery of short-swing profits from McMillan and Cicerone.

The deadline for making these submissions is February 4, 2015.  No later than February 18, 2015, the parties may file opposition responses, not to exceed 30 countable pages.  These dates may be modified by agreement, with court approval, to accommodate counsels' schedules.

**SO ORDERED**.

January 13, 2015.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

[12]Countable pages do not include, for example, the pages of the table of contents and table of authorities.

- 18 -