IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SUN RIVER ENERGY, INC., § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 3:13-CV-2456-D |
| VS. § | |
| § | |
| HARRY NEAL McMILLAN, et al., § | |
| § | |
| Defendants. § | |

<u>MEMORANDUM OPINION</u>

Following the receipt of additional briefing, the court enters this memorandum opinion explaining its award of short-swing profits to plaintiff Sun River Energy, Inc. ("Sun River") in a judgment filed today.[1]

I

Sun River sued defendants Harry Neal McMillan ("McMillan") and Cicerone Corporate Development, LLC ("Cicerone")[2] under § 16(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78p(b), to recover short-swing profits that McMillan and Cicerone realized from transactions in Sun River common stock and derivative securities. After the court addressed the parties' cross-motions for summary judgment and defendants' motion to amend the scheduling order, it conducted a bench trial. In its January

---

[1]The court sets out in this memorandum opinion its findings of fact and conclusions of law. *See* Fed. R. Civ. P. 52(a)(1). All findings of fact are based on a preponderance of the evidence standard.

[2]Sun River also sued CE McMillan Family Trust ("the Trust"), but it dismissed with prejudice its action against the Trust by November 14, 2014 stipulation of dismissal.

13, 2015 memorandum opinion and order, the court found that Sun River's action was not time-barred, and it interpreted SEC Rule 16b-6(c)(2), 17 C.F.R. § 240.16b-6(c)(2), and decided how it should be applied when calculating the amounts of short-swing profits that defendants must disgorge. *Sun River Energy, Inc. v. McMillan*, 2015 WL 158837, at *5, 8 (N.D. Tex. Jan. 13, 2015) (Fitzwater, J.). The court also concluded that additional briefing would be helpful in calculating Sun River's recovery of short-swing profits, and it established a procedure for each side to file supplemental briefs and responsive briefs. *Id.* at *8-9. These briefs have been filed and considered.

II

A

Sun River seeks to recover the sum of $949,104.12 from McMillan, and the sum of $1,015,212.30 from Cicerone, and to hold McMillan and Cicerone jointly and severally liable in the sum of $697,807.90. Defendants do not contest that Sun River is entitled to recover the sum of $1,015,212.30 from Cicerone. But they maintain that Sun River is only entitled to recover the sum of $669,104.32 from McMillan, and that McMillan and Cicerone are only jointly and severally liable in the sum of $501,104.32.

Based on certain matched transactions, defendants acknowledge that McMillan is liable for $501,104.32 in short-swing profits. On two grounds, however, defendants contend that McMillan is only liable for $168,000 more than that (i.e., $669,104.32 in total), and that defendants' joint and several liability is lower than what Sun River claims. First, defendants maintain that the maximum number of shares that can be attributed to McMillan from the

April 8, 2011 deemed sale from Cicerone to Joshua Pingel ("Pingel") is 175,000 based on McMillan's 50% ownership interest (his pecuniary interest) in Cicerone at the time of the deemed sale. Second, defendants contend that the number of shares attributed to McMillan from the Pingel deemed sale must be further reduced from 175,000 to 105,000 to avoid double counting, because 70,000 of the shares have already been matched to seven other purchases.

B

In April 2011 Cicerone and McMillan entered into an agreement with Pingel under which Pingel agreed to transfer to McMillan all of his interest in Cicerone in exchange for 350,000 shares of Sun River common stock, $50,000 in cash, and a truck. *Sun River Energy, Inc. v. McMillan*, 2014 WL 4771852, at *2 (N.D. Tex. Sept. 25, 2014) (Fitzwater, C.J.) ("*Sun River I*"). In *Sun River I* the court held that this transaction was a "sale" for purposes of determining liability for short-swing profits. *Id.* at *13 ("Regardless whether the transaction involved a change in beneficial ownership, a reasonable trier of fact could only find that it was a contract to dispose of securities, meeting the broad definition of 'sale' in § 78c(a)(14).").

Defendants maintain that McMillan's beneficial interest in the deemed sale to Pingel is limited to 175,000 shares based on his pecuniary interest—i.e., his 50% ownership interest—in Cicerone at the time of the sale. They rely on the conclusion in *Foremost-McKesson, Inc. v. Provident Securities Co.*, 423 U.S. 232, 243 (1976), that beneficial ownership status is determined before the purchase; the definition of "beneficial

owner" found in 17 C.F.R. § 240.16a-1(a)(2); the definition of "indirect pecuniary interest" in 17 C.F.R. § 240.16a-1(a)(2)(ii); and the provision of 17 C.F.R. § 240.16a-1(a)(2)(ii)(B) that a general partnership's pecuniary interest is measured according to the partnership agreement "in effect at the time of the transaction." Defendants posit that, although McMillan became a 100% owner of Cicerone as a result of the deemed sale, he was a 50% beneficial owner at the time of the sale.

Relying on 17 C.F.R. § 240.16a-1(a)(2)(i), Sun River argues that McMillan had a pecuniary interest in all 350,000 of the Sun River shares sold in the Pingel transaction because he had an opportunity to profit from the transaction. It posits that the pecuniary interest in the sale belonged entirely to McMillan because only he, as the sole remaining investor in Cicerone, would have enjoyed the risks and rewards of owning these shares had Cicerone not sold them. Sun River maintains that the opportunity to profit resulted from any appreciation in Cicerone's value following its disposition of Sun River stock at an attractive price, and that only McMillan had the opportunity to profit from the sale because he was the sole remaining investor in Cicerone and stood to enjoy 100% of the benefits that it received from the transaction. Sun River also asserts that the 50% ownership interest of Pingel in Cicerone should not be counted because he had no opportunity to profit from the sale.

The court disagrees with Sun River's reasoning. Sun River is relying on a definition of "pecuniary interest" —"the opportunity, directly or indirectly, to profit or share in any profit derived from a transaction"—to determine the *extent* of that interest. Such a measurement is not found in 17 C.F.R. § 240.16a-1(a)(2)(i), which is concerned with what

is necessary *to have* a pecuniary interest rather than *the extent of* that interest. Indeed, so far as 17 C.F.R. § 240.16a-1(a)(2)(i) is concerned, a person has a "pecuniary interest" if he has *any* direct or indirect opportunity to profit or share in any profit derived from a transaction.

The regulations do evince a standard of measurement, however, in another context. 17 C.F.R. § 240.16a-1(a)(2)(ii)(B) provides that a general partner's indirect pecuniary interest in the portfolio securities held by a general or limited partnership is the general partner's proportionate interest, as evidenced by the partnership agreement in effect at the time of the transaction and the partnership's most recent financial statements. In other words, when the regulations do define the *extent* of a person's pecuniary interest (here, an indirect pecuniary interest), it is based on the interest "in effect at the time of the transaction." There is no suggestion in the regulations that the interests of owners in a limited liability company's portfolio securities should be treated differently, meaning that McMillan's pecuniary interest in Cicerone is determined according to what it was at the time of the transaction, which is 50%.

Finally, 17 C.F.R. § 240.16a-1(a)(2) is consistent with an approach that relies on a person's ownership interest *at the time of* the transaction rather than *as a result of* the transaction. It uses the present tense to define "beneficial owner" as "any person who . . . has or shares a direct or indirect pecuniary interest in the equity securities[.]" 17 C.F.R. § 240.16a-1(a)(2). Applied to this case, it means that McMillan's interest in Cicerone is determined at the time of the sale of the Sun River stock to Pingel.

The court also disagrees with Sun River's assertion that the 50% ownership interest

of Pingel in Cicerone should not be counted. Sun River maintains that Pingel lacked a pecuniary interest in the transaction because he had no opportunity to profit from the sale of the Sun River stock since he was a purchaser rather than a seller. To illustrate why this is incorrect, the court will assume that Cicerone had sold 375,000 shares of Sun River stock on April 8, 2011 to John Doe, and that McMillan and Pingel were Cicerone's shareholders at the time of the transaction. McMillan and Pingel, as Cicerone's shareholders, would undoubtedly have had a pecuniary interest in the transaction in Sun River stock.

This fact does not change simply by substituting Pingel as the purchaser. Pingel had a pecuniary interest in the transaction, even though he was the purchaser of the shares, because they were being sold by Cicerone, in which Pingel had an ownership interest at the time of the sale. Although the transaction itself extinguished that ownership interest, it did not deprive Pingel of the opportunity, directly or indirectly, to profit or share in any profit from the transaction. Setting aside the fact that the transaction was a deemed sale for purposes of determining liability for short-swing profits, had it been an actual sale, the Sun River shares would have been part of the consideration (together with cash and a truck) that Pingel received in exchange for his interest in Cicerone. The value of the Sun River shares would have been a factor in determining what Pingel was willing to take in exchange for that interest. He would have had the opportunity, at least indirectly, to profit or share in any profit derived from the transaction in Sun River securities because of their impact on Cicerone's valuation, which, in turn, impacted the value of Pingel's ownership interest in Cicerone and what he was willing to accept in exchange for that interest. Sun River

implicitly recognizes this concept when it discusses in its response brief how the value of the Sun River stock may have affected the Pingel transaction. But it does not recognize that this demonstrates why Pingel had a pecuniary interest on the seller side of the transaction, and should not be viewed for securities laws purposes merely as a purchaser.

C

The court also holds that the number of shares attributable to McMillan as part of the Pingel sale must be reduced from 175,000 to 105,000 based on the fact that Sun River has already attributed 70,000 shares to McMillan for his 50% beneficial interest in purchases made on October 19, 2010, November 30, 2010, December 31, 2010, and January 3, 2011. In fact, in Sun River's supplemental brief, it matches 280,000 of the 350,000 shares from the Pingel deemed sale with the January 14, 2011 New Mexico Energy transaction, in apparent recognition that 70,000 shares have otherwise been matched.

D

The court therefore calculates the award of short swing profits and defendants' joint and several liability as follows. Defendants acknowledge that Cicerone is liable in the sum of $1,015,212.30, the amount that Sun River claims. They concede that the sum of $501,104.32 in matched transactions is awardable against McMillan. The court multiplies 105,000 shares of the Pingel deemed sale by $1.60 per share (the difference between the January 14, 2011 per share market price of $3.45 and the April 8, 2011 per share market price of $5.05), resulting in a profit of $168,000. The court adds this sum of $168,000 to the sum of $501,104.32 that defendants concede is properly calculated. This results in a total

sum of $669,104.32 for which McMillan is liable. Because Cicerone had no pecuniary interest in the deemed purchase of Sun River shares on January 14, 2011 as part of the New Mexico Energy transaction, the court holds that McMillan is jointly and severally liable with Cicerone in the amount of $501,104.32 (i.e., $669,104.32 - $168,000 = $501,104.32). The court awards these sums, and imposes joint and several liability to this extent, by judgment filed today.

    March 25, 2015.

 

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE